UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| NATIONAL CASUALTY CO. and SCOTTSDALE INDEMNITY CO., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) 07-2056<br>) |
| MICHAEL McFATRIDGE, THE COUNTY OF EDGAR, and GORDON RANDY STEIDL, | )<br>)<br>)<br>) |
| Defendants. | ) |
| MICHAEL McFATRIDGE and THE COUNTY OF EDGAR, | )<br>)<br>) |
| Third party plaintiffs, | )<br>) |
| v. | )<br>) |
| SCOTTSDALE INSURANCE CO., | )<br>) |
| Third party defendants. | ) |

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

In 2005, Gordon "Randy" Steidl ("Steidl") filed a lawsuit against a number of defendants, alleging unlawful conduct resulting in his wrongful prosecution, conviction, and continued imprisonment on a double homicide committed in Edgar County, Illinois (the "County") in 1986. Steidl was released from prison in 2004.

On March 15, 2007, the plaintiffs, National Casualty Company and Scottsdale Indemnity Company, filed this lawsuit against Steidl and two of the defendants in Steidl's civil suit, Michael McFatridge ("McFatridge") and the County.[1] The County defendants later filed a third party action to cure a pleading defect.[2] The parties have filed cross-motions for summary

---

[1] McFatridge and the County are collectively referred to as the "County defendants."

[2] The third party defendant, Scottsdale Insurance Company, is affiliated with National Casualty Company and Scottsdale Indemnity Company. Scottsdale Insurance Company insured

judgment. National Casualty Company, Scottsdale Indemnity Company and Scottsdale Insurance Company (collectively, "the insurers") seek a declaration that they have no duty to defend or indemnify the County defendants against Steidl's claims. The County defendants seek a declaration that third party defendant Scottsdale Insurance Company has a duty to defend them against Steidl's claims and, if necessary, indemnify them for any judgment.

## ANALYSIS

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

The construction of an insurance policy is a question of law. *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 527 (7th Cir. 2005).

> The primary objective in construing the language of the policy is to ascertain and give effect to the intentions of the parties as expressed in their agreement. If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning, but if the terms are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy. Courts will not strain to find ambiguity in an insurance policy where none exists.

*Commonwealth Ins. Co. v. Stone Container Corp.*, 351 F.3d 774, 777 (7th Cir. 2003) (*quoting McKinney v. Allstate Ins. Co.*, 722 N.E.2d 1125, 1127 (Ill. 1999).

### I. The County defendants' motion

The County defendants move for summary judgment in regard to the Comprehensive Law Enforcement Liability Policy and endorsement ("law enforcement policy") issued by Scottsdale Insurance Company. The policy was effective from May 25, 1989, to May 25, 1990. Steidl's first postconviction petition was pending during the policy period, and McFatridge is alleged to have engaged in a false publicity campaign and contributed to an atmosphere highly prejudicial to Steidl.

The policy grouped law enforcement employees into four classes, and the County determined the number of employees falling within each class. The premium was calculated by taking the number of employees in any class and multiplying by the per-person premium for that class. At first, the County insured no "Class C" employees and paid no premium for such

---

the County under a comprehensive liability policy but was not a party to the original complaint.

employees. On July 6, 1989, the parties added insurance coverage for four "Class C" employees and paid the corresponding premium for four employees in that class. The parties argue over several provisions of the policy in support of their arguments for, or against, coverage for McFatridge as a Class C employee.[3]

According to the law enforcement policy, "Class C Employees [are] those employees who do not exercise power of arrest and whose duties are *only administrative in nature*. Included in this category are (a) County Commissioners; (b) City Council; (c) Mayor; (d) City Manager; (e) Auxiliary or reserve police officers not exercising powers of arrest; (f) Coroner; and (g) School crossing guards/ humane officers/crime prevention officers." Law enforcement policy p.2. (Emphasis added.) State's attorneys are not specifically included, nor are they excluded, as Class C employees. Thus, the court must determine whether their duties are "only administrative in nature."

The policy does not define the term "administrative." The County defendants provide the following definition to bolster their argument that the state's attorney's duties are administrative.

> Connotes of or pertains to administration, especially management, as by managing or conducting, directing or superintending the execution, application or conduct of persons or things.

Black's Law Dictionary (5th ed.).

The duties of a state's attorney are defined by state law. *See* 55 Ill. Comp. Stat. 5/3-9005. The Illinois Supreme Court has ruled that the State's Attorney duties are, "in part, discretionary and not purely ministerial." *People ex. rel. Hanrahan v. One 1965 Oldsmobile*, 284 N.E.2d 646, 651 (Ill. 1972) (*rev'd on other grounds*). A state's attorney "commence[s] and prosecute[s] all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county[.]" 55 Ill. Comp. Stat. 5/3-9005(a)(1). He or she must "attend before judges and prosecute charges of felony or misdemeanor [.]" 55 Ill. Comp. Stat. 5/3-9005(a)(6). Comparing the dictionary definition to the duties specified by state law, it is clear that McFatridge's duties were not "*only* administrative in nature."

The court agrees with the insurers that McFatridge is not a Class C employee; the County defendants' motion for summary judgment [22] is denied.

## II. The insurers' motions

The insurers seek summary judgment in regard to all four policies. For the reasons discussed above, the insurers are entitled to summary judgment as to the 1989-90 law enforcement policy.

The three remaining policies insured the County after McFatridge stepped down as state's attorney in 1991. Those policies are (1) a Commercial General Liability ("CGL") policy from

---

[3] The parties do not argue that McFatridge falls within any other classification.

July 1, 1997 to July 1, 1998; (2) a CGL policy from July 1, 1998 to July 1, 1999; and (3) a Public Entity Liability policy from July 1, 1999 to July 1, 2000.

To determine whether an insurer has a duty to defend its insured, the court must compare the policy provisions to the allegations in the underlying complaint. *Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 732 (7th Cir. 2006). The allegations in the underlying complaint must be construed liberally to determine whether the acts alleged "fall within, or even *potentially* within" the policy coverage. *Native Am. Arts*, 435 F.3d at 732 (emphasis added). Thus, the court begins by looking to the time line in Steidl's complaint. In 1998, Steidl filed a second postconviction petition. While that petition was pending, McFatridge allegedly perpetuated a publicity campaign to defeat the postconviction petition and gave false testimony at the postconviction evidentiary hearing. The trial court denied the postconviction petition and resentenced Steidl in February 1999.

The time line suggests the possibility of coverage under the two CGL policies in effect in 1998 and early 1999.[4] The CGL policies cover "elective officers" and/or "employees" for certain "offense[s] . . . committed . . . during the policy period."[5] But McFatridge was neither an elective officer nor an employee of the County during the policy period. Thus, none of the policies in effect from 1998 through 2000 provided coverage for McFatridge's conduct during Steidl's second postconviction proceedings.

The court agrees with the plaintiffs that it has no duty under any of the four policies to defend or indemnify the County defendants against Steidl's claims, and grants summary judgment in favor of the plaintiffs.

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion for summary judgment [23] is granted. The defendants' motion for summary judgment [22] is denied. This case is terminated. The parties shall bear their own costs.

Entered this 18th day of April, 2008.

**s\Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

---

[4] Steidl's complaint does not allege any additional conduct by McFatridge during the period of the third policy, July 1999 to July 2000.

[5] *See* Pl. Ex. C, d/e 23-4, p. 10, 13, 20; Pl. Ex. D, d/e 23-5, p. 10, 13.